ONE EQUAL VOICE, the Association for Academic Professional Employees at the College of Lake County, Local 2394, IFT/AFT, AFL-CIO, Petitioner-Appellant, v. ILLINOIS EDUCATIONAL LABOR RELATIONS BOARD *et al.*, Respondents-Appellees.

First District (4th Division)   No. 1—01—1054

Opinion filed September 26, 2002.

Mildred F. Haggerty, of Haggerty & Koenig, Chtrd., of Chicago, for appellant.

James E. Ryan, Attorney General, of Chicago (Joel D. Bertocchi, Solicitor General, and John P. Schmidt, Assistant Attorney General, of counsel), for appellees.

PRESIDING JUSTICE THEIS delivered the opinion of the court:
Petitioner, One Equal Voice, the Association for Academic Profes-

sional Employees at the College of Lake County, Local 2394, IFT/AFT, AFL-CIO (the Union), appeals from the final order of the Illinois Educational Labor Relations Board (the Board), certifying the results from a representation election held at the College of Lake County (the College). The issue presented for review is whether the Board erred in finding that the ballots cast by two employees during the election were properly excluded on the basis that the employees were "confidential employees" as that term is defined in section 2(n) of the Illinois Educational Labor Relations Act (the Act) (115 ILCS 5/2(n) (West 2000)). For the following reasons, we reverse the decision of the Board and remand for further proceedings.

In February of 2000, the Union filed a representation petition, pursuant to section 7 of the Act (115 ILCS 5/7 (West 2000)), seeking to represent a bargaining unit composed of "all classified and specialist employees" and excluding "maintenance, custodial, and ground workers; faculty, counselors, and librarians; and managerial and confidential employees," employed by the College. Subsequently, an election was held on April 13, 2000, and in the initial tally of ballots, the Union received a majority in the election, by a margin of 103 to 102, to become the exclusive representative of the bargaining unit. Thereafter, among other challenges and objections, the College challenged the ballots of Suzanne Warchal and Kathleen Dempsey, on the basis that they were "confidential employees" as that term is defined under the Act.

On May 4, 2000, the administrative law judge (ALJ) of the Board conducted a hearing on the issue of the challenged ballots. He heard extensive testimony from four witnesses regarding the nature of the employees' job duties and the role of their supervisor. Dempsey is a research associate and Warchal is a secretary in the "Department of Institutional Effectiveness Planning and Research" of the College. Both employees report to Nancy McNerney, the assistant vice-president for institutional effectiveness planning and research. She, in turn, reports to Peter Krupczak, the vice-president for administrative affairs for the College.

Krupczak testified that he is responsible for the College's financial affairs. He stated that in the fall of 1998, the role of the "Department of Institutional Effectiveness Planning and Research" was changed from merely providing raw data to the administration to analyzing data and providing various scenarios and projections for decision-making purposes. He further stated that the reorganized department's responsibilities were to include establishing salary schedules and analyzing the impact of proposals made during the collective bargaining process to determine their financial impact on the College.

Krupczak testified that he had worked with McNerney at another

college where she had assisted in the collective bargaining process. While no collective bargaining had taken place since McNerney became employed with the College, he foresaw a similar role for her in her present position when he hired her in 1999. At the time of the hearing, McNerney had not yet participated in the development of labor management policies at the College, but was preparing data that would be used in negotiations with the Union. Krupczak stated that McNerney would be involved in the pending collective bargaining negotiations with the faculty, would participate in bargaining with the petitioned-for bargaining unit of classified and specialist employees if it were to be certified, and would also participate as a member of the College's collective bargaining team. According to Krupczak, McNerney would have access to the College's bottom line in labor negotiations and would be involved in creating the financial projections upon which the College's bottom-line negotiation position would be based.

McNerney testified that she had held her position for about one year. Her job primarily entails analyzing data and providing information to administrators for decision-making purposes. It was her understanding when she was hired that she would have a role in collective bargaining because that was her role at a previous college where she worked with Krupczak. In her previous job, she was responsible for analyzing collective bargaining proposals and making recommendations to the administration on how to make its proposals more attractive to the union. She had not yet been involved in collective bargaining at the College and had not yet developed any proposals or developed any salary information for collective bargaining. At the time she was hired, negotiations were concluding with the staff council union, which represents the maintenance and grounds workers. There had been no labor negotiations at the College since then. However, negotiations on a new faculty contract were to begin soon, and she was told several days before the hearing that she would be a member of the collective bargaining team for these negotiations. McNerney testified that she has access to the College's personnel and financial data. As she understood her position during collective bargaining, she and her staff would be responsible for determining the cost of various bargaining packages, initiating suggestions for formulating proposals during the bargaining process, and making recommendations concerning those proposals. It was also her understanding that she would be privy to the College's bottom line during collective bargaining.

McNerney further testified that Warchal is responsible for reviewing all of her work for accuracy and is also responsible for data entry and checks formulas used in making financial projections, including any formulas that would be used in collective bargaining. According to

McNerney, Warchal would be privy to the College's bottom line in negotiations and would have access to the printed reports that McNerney would produce in making her proposals. With respect to Dempsey, she works with her as a team on all of her research projects and would be responsible for working directly with her on framing bargaining proposals. Both Warchal and Dempsey are privy to her passwords to the computer system and share the same server. The department is organized such that it is not dependent on any given person to know where the computer files are and how they are set up. If someone is absent, the others in the department can find and access those files. It would be possible to keep information regarding the College's negotiating position from her staff, but if they maintained their current responsibilities, they would learn this information. McNerney would have to change her password if these employees were part of the bargaining unit.

Warchal testified that her current duties involve compiling enrollment reports, handling surveys and purchase orders, handling requests for information and sending out reports. She stated that she compiles information from various college departments and puts them into a format on the computer. She does not do any of the research. She has never had responsibilities with respect to collective bargaining, has not had access to the College's collective bargaining proposals or documents, and has not discussed collective bargaining with McNerney. She is the only secretary in the department and has access to the passwords for the department computer system.

Dempsey testified that her job as a research associate has primarily involved compiling and analyzing student-related data, courses, and review of programs in terms of their efficacy in providing services to students. She works with statistical software packages to create various spreadsheets. She has never had any involvement in making financial projections for the College. She had never had a role in collective bargaining and McNerney has not talked to her about such a role. Dempsey also testified that she was involved in the interview process when McNerney was hired and that a role in collective bargaining was never specifically mentioned during this process. She acknowledged that the focus of the department had shifted from issuing standard publications to providing more targeted research to assist various College departments in making more informed decisions. She agreed that the collective bargaining team could be one of the groups to which she is now asked to provide information. She further testified that she works together with McNerney on projects and occasionally reviews projects that McNerney is working on. They all have access to the same databases.

On July 24, 2000, the ALJ issued his recommended decision and order, finding that Dempsey and Warchal were confidential employees as that term is defined in section 2(n) of the Act (115 ILCS 5/2(n) (West 2000)). Therefore, according to the ALJ, these two employees were ineligible to vote in the representation election, and their votes should not have been counted. The Union filed timely written exceptions to the ALJ's findings. On January 12, 2001, the Board issued its decision, concluding that Dempsey and Warchal were confidential employees ineligible to vote in the representation election. The majority of the Board, in a 4 to 3 decision, concluded that McNerney's job duties encompassed formulating, determining, and effectuating management policies regarding labor relations. While she had not yet participated in labor negotiations, the majority concluded that the evidence firmly established that her current responsibilities included the collective bargaining process. The Board also found that Dempsey and Warchal would assist McNerney in those matters. Additionally, the Board found that these employees were confidential employees because they would have access to confidential information concerning the College's bargaining position during collective bargaining negotiations. The Union filed a timely appeal.

■ The Union contends that the Board's determination that Warchal and Dempsey are "confidential employees" is contrary to law because it is based solely on their alleged future duties and not on their present responsibilities and is against the manifest weight of the evidence. Initially, we address the appropriate standard of review. An administrative agency's findings on questions of fact are deemed to be *prima facie* true and correct and will not be reversed unless they are against the manifest weight of the evidence. *City of Belvidere v. Illinois State Labor Relations Board*, 181 Ill. 2d 191, 204, 692 N.E.2d 295, 302 (1998). The agency's determination on purely legal questions is reviewed *de novo* and is not binding on a reviewing court. *Belvidere*, 181 Ill. 2d at 205, 692 N.E.2d at 302. However, where the agency's findings are a mixed question of law and fact, the appropriate standard is whether the decision was clearly erroneous, "so as to provide some deference to the [agency's] experience and expertise." *Belvidere*, 181 Ill. 2d at 205, 692 N.E.2d at 302. Here, the Board's determination is best characterized as a mixed question of law and fact because it involves assessing the nature of various employees' job duties and determining whether they should be characterized under section 2(n) of the Act as "confidential," a legal term that requires interpretation. See *Belvidere*, 181 Ill. 2d at 205, 692 N.E.2d at 302. Accordingly, we review the Board's decision under the clearly erroneous standard.

■ A confidential employee has been defined under the Act as either:

"[A]n employee, who (i) in the regular course of his or her duties, assists and acts in a confidential capacity to persons who formulate, determine and effectuate management policies with regard to labor relations or who (ii) in the regular course of his or her duties has access to information relating to the effectuation or review of the employer's collective bargaining policies." 115 ILCS 5/2(n) (West 2000).

Those falling within the ambit of the definition are excluded from labor organizations that otherwise represent those employees and act to protect their rights. *Board of Education of Community Consolidated High School District No. 230, Cook County v. Illinois Educational Labor Relations Board*, 165 Ill. App. 3d 41, 56, 518 N.E.2d 713, 722 (1987). Thus, the exemption is narrowly interpreted because it precludes the confidential employee from exercising the panoply of rights set forth in the Act. *Community Consolidated High School District No. 230*, 165 Ill. App. 3d at 60, 518 N.E.2d at 725.

The purpose of excluding confidential employees from the bargaining unit is to prevent employees from having their loyalties divided between their employer, who expects confidentiality in labor relations matters, and the union, which may seek access to the confidential materials to gain a bargaining advantage. *Chief Judge of the Circuit Court v. American Federation of State, County & Municipal Employees, Council 31*, 153 Ill. 2d 508, 523, 607 N.E.2d 182, 189 (1992). Confidential employees "have the potential for obtaining advance knowledge of confidential labor relations information, thereby upsetting the normal balance of negotiations." *Community Consolidated High School District No. 230*, 165 Ill. App. 3d at 60, 518 N.E.2d at 725.

By its terms, section 2(n) sets up two separate yet related tests in determining whether an employee possesses confidential status. The first test under subsection (i) has been labeled the "labor nexus" test. Under this test, if an employee assists in a confidential capacity in the regular course of his or her duties a person who formulates, determines *and* effectuates labor relations policies, then the employee holds confidential status. *Chief Judge*, 153 Ill. 2d at 523, 607 N.E.2d at 189. The second mode for determining if an individual is a confidential employee under subsection (ii) has been deemed the "labor access" or "authorized access" test. Where the employee has authorized access to information concerning matters specifically related to the collective bargaining process between labor and management, the employee is deemed confidential. *Chief Judge*, 153 Ill. 2d at 523, 607 N.E.2d at 189.

Under these tests, the Board and the courts have generally been

reluctant to consider as evidence an employee's future job duties when the onset of those duties is merely a speculative possibility. See, *e.g.*, *Board of Education of Plainfield Community Consolidated School District No. 202 v. Illinois Educational Labor Relations Board*, 143 Ill. App. 3d 898, 910, 493 N.E.2d 1130, 1138 (1986) (principals' planned future role would not control their current status for purposes of determining whether secretaries were confidential employees); *Vermilion Occupational Technical Center*, 1 Pub. Employee Rep. (Ill.) par. 1103, No. 84—UC—0003—S, at VII-203 (IELRB April 17, 1985) ("we must look to that employee's *present* job duties and not to possible and, as yet, quite uncertain developments" (emphasis in original)). In both *Plainfield* and *Vermilion*, there was little or no evidence to support an impending future role in labor relations. Rather, the record reflected merely speculative future changes in the employee's job duties. The inherent risk of considering such possible future job duties is evident as the employer could use such speculation as a method to exclude employees from a bargaining unit.

However, in conjunction with the above tests, the "reasonable expectation" test has been adopted by the Board and recognized by our supreme court as a means to consider evidence of impending future job duties where there has been no history of collective bargaining, but where it was reasonably expected that confidential responsibilities would be assumed by the employee with the establishment of a collective bargaining unit. *Chief Judge*, 153 Ill. 2d at 524, 607 N.E.2d at 1989-90; *City of Burbank*, 1 Pub. Employee Rep. (Ill.) par. 2008, No. S—RC—45, at VIII-45 (ISLRB June 6, 1985).

In *City of Burbank*, the Board was troubled by the application of the statute when addressing the confidential status of an employee in a department with no prior collective bargaining relationship. In that situation, the Board found that it would be fruitless for the decision-maker to look only at the tasks that the person actually performed at the time of the petition and/or hearing. Instead, the Board stated that it would consider the employee's and his superior's future roles in collective bargaining based upon the employee's current job duties and a reasonable expectation that the employee alleged to be confidential would in fact be performing confidential duties that meet the statutory definition with the onset of collective bargaining within the department. To prevent abuse, the Board qualified the reasonable expectation test by permitting either party to file a unit clarification petition if actual confidential duties did not result. *City of Burbank*, 1 Pub. Employee Rep. (Ill.) par. 2008, at VIII-45.

■ We find that the same rationale for applying the reasonable expectation test in *City of Burbank* applies under the narrow set of

facts presented in the instant appeal. While we recognize that there has been a history of collective bargaining at the College with other bargaining units, the department in which McNerney, Warchal, and Dempsey work has recently undergone a complete restructuring. The effect of that restructuring, as testified to by several witnesses, was to establish a new title and new role for the department such that it would now be involved in the upcoming collective bargaining process where it had previously played no role. Additionally, since the restructuring of the department, and McNerney's new role, no collective bargaining negotiations have taken place. As such, it would be fruitless for the decision-maker to examine solely the employee's and supervisor's current job tasks. Rather, in the instant case, the decision-maker should have considered whether there was a reasonable expectation that the employees alleged to be confidential would in fact be performing confidential duties that meet the statutory definition with the onset of the department's established new role in the impending collective bargaining process.

Here, while the ALJ and the Board considered the facts in relation to the labor nexus and access tests, they never considered the application of the reasonable expectation test. Instead, they concluded that even though McNerney, Warchal, and Dempsey had not yet been involved in labor relations, their current job duties had "firm contours" and thus were not merely hypothetical future duties, applying the language of their *Parkland College* decision. *Parkland College*, 15 Pub. Employee Rep. (Ill.) par. 1021, No. 98—UC—0005—S (IELRB February 2, 1999). In *Parkland*, the question at issue was whether a petition to add the position of professor emeritus to a bargaining unit of full-time employees at the college was premature where it was a newly created position that had not yet been filled. The Board found that where the terms and conditions of employment of the position were not speculative but, rather, had "firm contours," the technically unfilled position was not distinguishable from a filled position. Under these circumstances, the Board created a narrow exception to the principle that these petitions are generally premature. We find that the reasonable expectation test is better suited to address the concerns at issue in the present case, given the statutory policy considerations regarding confidential employees and the need for maintaining the normal balance of the bargaining process.

Without having considered the appropriate test to the given set of facts, we find that the decision of the Board was clearly erroneous. Accordingly, we remand this matter to the Board with directions to apply the reasonable expectation test to the facts that were presented at the hearing without prejudice to either party from also introducing further

evidence as to whether actual confidential duties have since resulted under the labor nexus and labor access tests.

For the aforementioned reasons, we reverse the opinion and order of the Board and remand this matter for further proceedings not inconsistent with this opinion.

Reversed and remanded.

HARTMAN and GREIMAN, JJ., concur.