# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

**Department of Central Management Services/The Department of State Police v. Illinois Labor Relations Board, State Panel, 2012 IL App (4th) 110356**

---

| | |
|---|---|
| Appellate Court Caption | THE DEPARTMENT OF CENTRAL MANAGEMENT SERVICES/THE DEPARTMENT OF STATE POLICE, Petitioner, v. THE ILLINOIS LABOR RELATIONS BOARD, STATE PANEL; JACALYN J. ZIMMERMAN, MICHAEL HADE, MICHAEL COLI, ALBERT WASHINGTON, and JESSICA KIMBROUGH, the Members of Said Board and Panel in Their Official Capacity Only; ELAINE L. TARVER, in Her Official Capacity Only as an ILRB Administrative Law Judge; JOHN BROSNAN, Executive Director of Said Board in His Official Capacity Only; and THE ILLINOIS STATE EMPLOYEES ASSOCIATION, LABORERS INTERNATIONAL UNION, LOCAL 2002, Respondents. |
| District & No. | Fourth District<br>Docket No. 4-11-0356 |
| Filed | December 11, 2012 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | An attorney employed by the State Police in a position classified as a public service administrator was properly found not to be a managerial employee for purposes of being included in a collective-bargaining unit, since he had little discretion to act independently on behalf of the State Police; however, the Board's conclusion that he was not a confidential employee was clearly erroneous under a proper application of the authorized-access test; therefore, the finding that the attorney was not a confidential employee was reversed and the portion of the certification of representation including the attorney's position in the collective-bargaining unit was vacated. |

| | |
|---|---|
| Decision Under Review | Petition for review of order of Illinois Labor Relations Board, State Panel, No. S-RC-10-122. |
| Judgment | Reversed in part and vacated in part. |
| Counsel on Appeal | Joseph M. Gagliardo and Lawrence Jay Weiner (argued), Special Assistant Attorneys General, of Chicago, for petitioner. |
| | Lisa Madigan, Attorney General, of Chicago (Michael A. Scodro, Solicitor General, and John P. Schmidt (argued), Assistant Attorney General, of counsel), for respondent State of Illinois. |
| Panel | JUSTICE TURNER delivered the judgment of the court, with opinion. Justices Pope and Knecht concurred in the judgment and opinion. |

**OPINION**

¶ 1 Pursuant to Illinois Supreme Court Rule 335 (eff. Feb. 1, 1994) and section 9(i) of the Illinois Public Labor Relations Act (Labor Act) (5 ILCS 315/9(i) (West 2008)), petitioner, the Department of Central Management Services/Department of State Police (Department), seeks direct review of a decision of the Illinois Labor Relations Board, State Panel (Board), to include the position held by Nicholas Kondelis, an attorney with the State Police, in a stand-alone bargaining unit represented by the Illinois State Employees Association, Laborers International Union, Local 2002 (Union). On review, the Department asserts Kondelis cannot be a member of the collective-bargaining unit because he is a (1) managerial employee under section 3(j) of the Labor Act (5 ILCS 315/3(j) (West 2008)), and (2) confidential employee under section 3(c) of the Labor Act (5 ILCS 315/3(c) (West 2008)). We reverse in part the Board's decision and vacate in part the certification of representation.

¶ 2 I. BACKGROUND

¶ 3 On October 26, 2009, the Union filed a representation-certification petition, seeking to create a collective-bargaining unit, consisting of four attorney positions classified as public service administrator, option 8L, or staff attorney with the State Police and Illinois Emergency Management Agency. The positions at the Illinois Emergency Management Agency, which were certified as members of the collective-bargaining unit, are not at issue

-2-

in this appeal. The attorneys who held the State Police positions at issue were William Jarvis and Nicholas Kondelis. The Department responded, noting the State Police had four public service administrator, option 8L, positions and objecting to those positions' inclusion in the proposed collective-bargaining unit. The Union then sought to include only the additional public service administrator, option 8L, position of William Hosteny.

¶ 4 On April 29, 2010, administrative law judge Sylvia Rios commenced the hearing on the Union's proposed certification. The Department presented the testimony of Hosteny, who was the acting chief legal counsel for the State Police, and numerous supporting exhibits. The Union presented the testimony of Kondelis and Jarvis and a joint exhibit. The following is a brief summary of the evidence since the parties are familiar with the facts of this case.

¶ 5 The evidence showed the structure of the State Police and the current union representation. The sworn officers of the State Police that were troopers, sergeants, lieutenants, and captains were represented by the Troopers Lodge 41 of the Fraternal Order of Police (Fraternal Order of Police) and the master sergeants were represented by the Teamsters. The Director of the Department of State Police has several internal offices that are led by chiefs that report to the Director's office. Those offices included the legal office, the labor-relations office, the office of governmental affairs, and the "EEO" office. The State Police's legal office consists of 10 attorneys. Seven of the attorneys are sworn police officers who would normally be represented by the Fraternal Order of Police but were excluded from the bargaining unit under a memorandum of understanding between the State Police and the Fraternal Order of Police. The other three attorneys are Hosteny, Kondelis, and Jarvis, all of whom are civilians in the public service administrator, option 8L, position. At the time of the hearing, Hosteny was acting chief counsel. The chief of the legal office, currently Hosteny, officially reported to the first deputy director, Luis Tigera, who was the second highest ranking person in the State Police, and could also report to the chief of staff, Jessica Trame.

¶ 6 Moreover, Hosteny testified he worked with other offices on legal matters, including the labor-relations office. According to Hosteny, all of the staff attorneys in the office had the same kinds of duties, and he assigned cases based on who was available and who had the best background for the issue. With his labor-relations background, Hosteny did most of the labor-relations work. Evidence was presented showing a time when Jarvis worked on a labor-relations issue. Due to Kondelis's criminal-law background, Hosteny often assigned Kondelis to work on merit-board cases. Hosteny explained discipline of sworn officers was governed by the State Police Act (20 ILCS 2610/0.01 *et seq.* (West 2008)) and how the process worked. In explaining the merit-board process, Hosteny noted the State Police were represented by the Attorney General's office and his office assisted with the cases by lining up witnesses, prepping witnesses, and drafting questions. Hosteny emphasized that, while he assigned attorneys matters based on their legal background, he did cross-train his employees so they could handle a matter when needed. Hosteny also noted Kondelis was the attorney in the office that handled matters with the State Police's forensic science laboratories and often Kondelis was contacted directly on such issues.

¶ 7 Kondelis testified he was a former prosecutor in the Cook County State's Attorney's office. With his criminal-law background, "a lot" of Kondelis's work was with merit-board cases. Kondelis explained he had no authority to accept or reject settlement offers in merit-

board cases. He relayed any settlement offers to Hosteny, who discussed the matter with Tigera and Trane, outside of Kondelis's presence. Kondelis also testified that, while he could draft a merit-board complaint, he had no authority to file the complaint. Such matters had to go through Hosteny.

¶ 8    In addition to merit-board cases, Kondelis conducted seminars for the State Police's forensic laboratory scientists. He had also worked on an Equal Opportunity Employment Commission case involving a forensic scientist. In the past, Hosteny had also asked Kondelis to provide State Police officers information on issues such as forced blood draws. Further, Kondelis testified he was not involved in matters of collective bargaining and labor issues. He had never been involved with grievances, labor arbitrations, and collective-bargaining strategies. Even if a merit-board case he was working on also involved a grievance, Kondelis had nothing to do with the grievance process.

¶ 9    In October 2010, administrative law judge Elaine L. Tarver filed a written recommended decision and order, finding Kondelis's and Jarvis's positions were neither managerial nor confidential. (The record does not reveal why the order was written by a different administrative law judge than the one that heard the evidence.) Thus, the decision recommended the certification of the bargaining unit that included Kondelis's and Jarvis's positions. Hosteny's public service administrator, option 8L, position was excluded due to the lack of evidence about that position. Tarver later filed a corrected recommended decision and order. The Department filed exceptions to the corrected recommended decision and order, asserting Kondelis and Jarvis should have been excluded because they were both managerial and confidential employees.

¶ 10    On March 25, 2011, the Board, which was comprised of Jacalyn J. Zimmerman, Michael Hade, Michael Coli, Albert Washington, and Jessica Kimbrough, issued a decision and order, rejecting the administrative law judge's determination that Jarvis was not a confidential employee. On March 29, 2011, the Board's executive director, John Brosnan, executed the certification of representative for the collective-bargaining unit that included Kondelis's position.

¶ 11    On April 26, 2011, the Department filed its timely petition for administrative review under Rule 335. See 5 ILCS 315/9(i) (West 2008). Accordingly, we have jurisdiction under article VI, section 6, of the Illinois Constitution of 1970 (Ill. Const. 1970, art. VI, § 6) and section 9(i) of the Labor Act (5 ILCS 315/9(i) (West 2008)).


¶ 12                                II. ANALYSIS
¶ 13                            A. Standard of Review
¶ 14    With direct administrative review, this court reviews *de novo* the agency's decision on a question of law. *Niles Township High School District 219 v. Illinois Educational Labor Relations Board*, 379 Ill. App. 3d 22, 26, 883 N.E.2d 29, 33 (2007). On the other hand, we afford deference to the agency's decision on a question of fact and will not reverse such a decision unless it is against the manifest weight of the evidence. *Niles Township*, 379 Ill. App. 3d at 26, 883 N.E.2d at 33. An administrative agency's finding is "against the manifest weight of the evidence only where the opposite conclusion is clearly evident." *Peacock v.*

*Board of Trustees of the Police Pension Fund*, 395 Ill. App. 3d 644, 652, 918 N.E.2d 243, 250 (2009).

¶ 15    Some agency decisions involve both questions of law and fact. " 'A mixed question of law and fact asks the legal effect of a given set of facts.' " *Niles Township*, 379 Ill. App. 3d at 26, 883 N.E.2d at 33 (quoting *Elementary School District 159 v. Schiller*, 221 Ill. 2d 130, 143, 849 N.E.2d 349, 358 (2006)). This court will not reverse an agency's decision on a mixed question of law and fact unless it is clearly erroneous. *Niles Township*, 379 Ill. App. 3d at 26, 883 N.E.2d at 33. Our supreme court has defined the clearly erroneous standard as follows:

"An agency decision will be reversed because it is clearly erroneous only if the reviewing court, based on the entirety of the record, is left with the definite and firm conviction that a mistake has been committed. [Citation.] While this standard is highly deferential, it does not relegate judicial review to mere blind deference of an agency's order." (Internal quotation marks omitted.) *SPEED District 802 v. Warning*, 242 Ill. 2d 92, 112, 950 N.E.2d 1069, 1080-81 (2011) (quoting *Board of Trustees of the University of Illinois v. Illinois Labor Relations Board*, 224 Ill. 2d 88, 97-98, 862 N.E.2d 944, 950-51 (2007)).

Generally, Illinois courts treat the Board's determination of whether an employee is a managerial or confidential employee as a mixed question of law and fact and thus review the matter under the clearly erroneous standard. See *Board of Education of Glenview Community Consolidated School District No. 34 v. Illinois Educational Labor Relations Board*, 374 Ill. App. 3d 892, 899, 874 N.E.2d 158, 164 (2007); *County of Cook v. Illinois Labor Relations Board-Local Panel*, 351 Ill. App. 3d 379, 387, 813 N.E.2d 1107, 1115 (2004).

¶ 16                              B. Managerial Employee

¶ 17    The Department first contends the Board erred by including Kondelis's position in the collective-bargaining unit because he is a managerial employee and the Labor Act excludes such employees from engaging in collective bargaining. See 5 ILCS 315/3(n), 6(a) (West 2008). The Board alleges Kondelis's primary duties of assisting in merit-board cases and advising personnel in the State Police's forensic science laboratories do not make him a managerial employee. We conclude the Department has failed to show the Board's decision was clearly erroneous.

¶ 18    Section 3(j) of the Labor Act (5 ILCS 315/3(j) (West 2008)) defines "managerial employee" as "an individual who is engaged predominantly in executive and management functions and is charged with the responsibility of directing the effectuation of management policies and practices." The purpose of the exclusion is to "maintain the distinction between management and labor and to provide the employer with undivided loyalty from its representatives in management." *Chief Judge of the Sixteenth Judicial Circuit v. Illinois State Labor Relations Board*, 178 Ill. 2d 333, 339, 687 N.E.2d 795, 797 (1997). In determining whether an employee is a "managerial employee" under the Labor Act, Illinois courts have utilized the following two tests: (1) "the traditional test, which considers whether the employee is a managerial employee as a matter of fact," and (2) "the alternative test, which considers whether the employee is a managerial employee as a matter of law." (Internal

quotation marks omitted.) *Department of Central Management Services/The Illinois Human Rights Comm'n v. Illinois Labor Relations Board, State Panel*, 406 Ill. App. 3d 310, 315, 943 N.E.2d 1150, 1155 (2010) (quoting *Department of Central Management Services/The Department of Healthcare & Family Services v. Illinois Labor Relations Board, State Panel*, 388 Ill. App. 3d 319, 330, 902 N.E.2d 1122, 1130 (2009).

¶ 19    On the issue of whether the position was a managerial one, the administrative law judge found Kondelis (1) did not meet the first criterion of the traditional test; (2) was not managerial under the application of the considerations in *Salaried Employees of North America (SENA) v. Illinois Local Labor Relations Board*, 202 Ill. App. 3d 1013, 1022, 560 N.E.2d 926, 933 (1990); and (3) was not a managerial employee as a matter of law because his functions were not prescribed by law. On appeal, the Department's application of the law to the facts of this case, which is only 10 lines long and contains no citation to the evidence presented at the hearing, appears to assert Kondelis is a managerial employee under the considerations of *SENA*. The administrative law judge found *SENA* distinguishable from the facts of this case because Kondelis did not regularly provide assistance to, or consult with, the labor-relations office as such matters are handled by Hosteny. Additionally, despite the cross-training, the administrative law judge found the evidence showed the attorneys were divided by their background and experience.

¶ 20    In *SENA*, 202 Ill. App. 3d at 1021, 560 N.E.2d at 932, the reviewing court emphasized the managerial exclusion exists to prevent employees from being placed in a position that requires them to divide their loyalty between the employer and the collective-bargaining unit. There, the law department at issue functioned as a single cohesive unit as tasks were assigned in a team fashion without any acknowledgment of formal management-union division between the attorneys. *SENA*, 202 Ill. App. 3d at 1022, 560 N.E.2d at 933. Moreover, the reviewing court found the law department was an inherent part of the city as all of the attorneys had the authority to recommend changes in the manner in which the city operated. *SENA*, 202 Ill. App. 3d at 1022-23, 560 N.E.2d at 933. The law department attorneys also exercised a tremendous amount of discretion on the city's behalf, and thus the reviewing court did not believe the city should have to bear the divided loyalty that often followed unionization. *SENA*, 202 Ill. App. 3d at 1023, 560 N.E.2d at 933. Last, the reviewing court emphasized the uniqueness of the facts of the case and noted the law department's structure was diffused rather than rigid. *SENA*, 202 Ill. App. 3d at 1023, 560 N.E.2d at 933-34.

¶ 21    Here, the State Police's legal office has a clear hierarchy and a division of labor. Hosteny, as acting chief legal counsel, assigned matters to the other attorneys in the office and generally relied on the attorney's background and experience in assigning the cases. Due to his criminal-law background, Kondelis worked primarily on merit-board cases. In such cases, Kondelis had no authority to accept or reject settlement offers and was not even present when the settlement offers were discussed. Moreover, Kondelis did not have the authority to file a merit-board complaint. The complaint had to go through Hosteny. At the merit-board hearings, the State Police were represented by the Attorney General's office, and Kondelis only assisted that office. The Department noted those cases were against union members, who were usually represented by union attorneys. However, the only union members mentioned at the hearing as being disciplined in the merit-board process belonged to the

Teamsters and the Fraternal Order of Police, not the union from which the Department seeks to exclude Kondelis's position. The only evidence of Kondelis acting independently was in giving legal advice to the forensic laboratories. Hosteny testified the laboratory employees could contact Kondelis directly about questions.

¶ 22 Thus, we find the structure of the State Police's legal division is not diffused, and Kondelis had little discretion to act independently on behalf of the State Police. The facts of this case are clearly distinguishable from those in *SENA* and the same considerations do not apply here. Accordingly, the Board's finding Kondelis failed to qualify as a managerial employee under the application of the considerations in *SENA* is not clearly erroneous.

¶ 23 C. Confidential Employee

¶ 24 The Department further asserts Kondelis should not have been included in the collective-bargaining unit because he is a confidential employee, which the Labor Act also excludes from engaging in collective bargaining. See 5 ILCS 315/3(n), 6(a) (West 2008). The Board argues its decision Kondelis failed to meet the definition of "confidential employee" is not clearly erroneous because the record shows Kondelis did not handle labor-relations matters and did not have authorized access to collective-bargaining information. However, the Board's decision and its argument on appeal consider only the work Kondelis has done so far in his position as a public service administrator, option 8L, and fail to take into account all of the position's job responsibilities.

¶ 25 Section 3(c) of the Labor Act (5 ILCS 315/3(c) (West 2008)) defines a "confidential employee" as the following:

"an employee who, in the regular course of his or her duties, assists and acts in a confidential capacity to persons who formulate, determine, and effectuate management policies with regard to labor relations or who, in the regular course of his or her duties, has authorized access to information relating to the effectuation or review of the employer's collective bargaining policies."

The Labor Act excludes confidential employees to prevent "employees from 'having their loyalties divided' " between their employer, who expects confidentiality in labor-relations matters, and their union, which may seek access to confidential material to gain an advantage in the bargaining process. *Chief Judge of the Circuit Court v. American Federation of State, County & Municipal Employees, Council 31*, 153 Ill. 2d 508, 523, 607 N.E.2d 182, 189 (1992) (hereinafter *AFSCME*). For determining whether an employee is a "confidential employee" under section 3(c) of the Labor Act, three different tests have been formulated. *AFSCME*, 153 Ill. 2d at 523, 607 N.E.2d at 189. If an employee meets the requirements established in any one of the tests, the employee is a confidential employee for purposes of the Labor Act. *AFSCME*, 153 Ill. 2d at 523, 607 N.E.2d at 189. The employer bears the burden of proving the employee is a confidential employee.

¶ 26 In this case, the Department only asserted Kondelis was a confidential employee under the labor-nexus and authorized-access tests, and the administrative law judge found Kondelis was not a confidential employee under those tests. On appeal, the Department sets forth both the labor-nexus and the authorized-access tests, but it does not present any argument as to

how Kondelis's position met the requirements of the labor-nexus test. Due to that failure, the Board asserts the Department has forfeited any argument Kondelis is a confidential employee under the labor-nexus test. See Ill. S. Ct. R. 341(h)(7) (eff. Sept. 1, 2006) (providing for the waiver of any point not argued). We note the Department did not file a reply brief, and thus it did not respond to the Board's forfeiture argument. Accordingly, we find the Department has forfeited any argument based on the labor-nexus test.

¶ 27   Under the authorized-access test, an employee is deemed confidential if the employee has authorized access to information concerning matters specifically related to the collective-bargaining process between labor and management. *AFSCME*, 153 Ill. 2d at 523, 607 N.E.2d at 189. Information related to the collective-bargaining process would include (1) the employer's strategy in dealing with an organizational campaign, (2) actual collective-bargaining proposals, and (3) the information relating to matters dealing with contract administration. *City of Evanston v. Illinois State Labor Relations Board*, 227 Ill. App. 3d 955, 978, 592 N.E.2d 415, 430 (1992). However, an employee's "access to 'confidential' information concerning the general workings of the department or to personnel or statistical information upon which an employer's labor relations policy is based is insufficient to confer confidential status." *City of Evanston*, 227 Ill. App. 3d at 978, 592 N.E.2d at 430. Additionally, the access to information must be in the regular course of the employee's duties. *AFSCME*, 153 Ill. 2d at 525, 607 N.E.2d at 190.

¶ 28   In concluding Kondelis was not a confidential employee, the administrative law judge found he was not privy to conversations, documents, meetings, or any other communications concerning labor relations. The order noted Kondelis did have access to investigative reports drafted by the internal affairs division, but the record did not disclose the information contained in such reports. The administrative law judge found that, since Kondelis did not have job duties related to collective bargaining, contract matters, or contract administration matters, he did not regularly handle or have access to information that, if divulged, would provide advance notice to the bargaining unit on labor-relation matters.

¶ 29   The aforementioned findings focus on the work Kondelis has done so far in his position with the State Police and do not look at the job responsibilities of Kondelis's position. While this issue was not raised in the parties' briefs, it was discussed at oral arguments. After oral arguments, respondent was granted leave to cite *One Equal Voice v. Illinois Educational Labor Relations Board*, 333 Ill. App. 3d 1036, 777 N.E.2d 648 (2002). In that case, the First District noted that, under the tests for determining a confidential employee, both the Board and courts "have generally been reluctant to consider as evidence an employee's future job duties when the onset of those duties is merely a speculative possibility." *One Equal Voice*, 333 Ill. App. 3d at 1042-43, 777 N.E.2d at 653-54. "The inherent risk of considering such possible future job duties is evident as the employer could use such speculation as a method to exclude employees from a bargaining unit." *One Equal Voice*, 333 Ill. App. 3d at 1043, 777 N.E.2d at 654. The court went on to find that, due to the recent restructuring of job functions, the Board should have applied the reasonable-expectation test, which was adopted "to consider evidence of impending future job duties where there has been no history of collective bargaining." *One Equal Voice*, 333 Ill. App. 3d at 1043, 777 N.E.2d at 654.

¶ 30   We find *One Equal Voice* distinguishable from this case because the job duties for

Kondelis's position are not speculative possibilities. The evidence showed the State Police's legal office, in which Kondelis works, currently had the responsibility of providing legal advice to other internal divisions, including the labor-relations division. Specifically, the job description for Kondelis's position states one of his job duties is drafting and reviewing legal documents necessary for the functioning of the agency, including, *inter alia*, labor agreements. The Department presented numerous documents showing actual work by attorneys in the legal office on matters related to the collective-bargaining process. Several documents were related to Jarvis's work assignment, for which he worked with the chief of the labor-relations division on an "interest arbitration" involving the contract with the Teamsters. In finding Jarvis was a confidential employee, the Board found Jarvis's aforementioned worked clearly exposed him to "sensitive information regarding collective bargaining strategy." Despite the fact Jarvis had only that one labor-relations assignment, the Board found it was part of his regular course of duties because it was a normal task and not an *ad hoc* assignment. The Department also submitted labor-relations work done by Hosteny related to the collective-bargaining agreement with the Teamsters, which also demonstrated access to information related to the collective-bargaining process.

¶ 31 Moreover, Hosteny explained Kondelis could be assigned such work and indicated why Kondelis had not yet received such work. Specifically, Hosteny testified that, while he generally assigned worked based on an employee's background, he had the right to give any of the assignments to any of his legal staff and did cross-train his employees. Additionally, he explained all of the public service administrator, option 8L, attorneys in his office perform similar roles as legal advisors for the State Police. With his labor-relations background, Hosteny currently performed most of the labor-relations work in his office. Further, we note the evidence did not indicate the labor agreement language contained in the job description for a public service administrator, option 8L, was only included to keep the position out of the union.

¶ 32 Accordingly, the Department's evidence clearly showed providing legal advice to the labor-relations division is part of a public service administrator option 8L's regular job responsibilities, which gave the employee authorized access to information concerning the collective-bargaining process between labor and management. The fact Hosteny has yet to give Kondelis, the current employee holding the position, such an assignment carries little weight because Hosteny could assign Kondelis or any future employee in the position such a task at any time. Looking just at what the current employee has done so far in the position, and not what his or her job responsibilities include, yields absurd results. For example, as soon as Hosteny assigned Kondelis to an assignment related to collective bargaining, he would need to be removed from the union, which could happen at any time. The limited focus also forces a supervisor to make sure all employees perform all of their job assignments as soon as possible when some tasks may need more on-the-job experience before an employee can properly perform it. Moreover, since Kondelis is in the same office as attorneys who have received collective-bargaining assignments, it is highly likely he is present for conversations about those assignments or has computer access to his coworkers' work. Keeping Kondelis's position from all access to collective-bargaining related materials would place a large burden on the legal office. Accordingly, we hold that, in applying the

authorized-access test, one must consider the position's job responsibilities and not just what the current position holder just happens to have done so far in the position.

¶ 33 Here, under a proper application of the authorized-access test, Kondelis's public service administrator, option 8L, position is a confidential employee. Accordingly, we find the Board's conclusion Kondelis's position was not a confidential one under section 3(c) of the Labor Act was clearly erroneous. Thus, we vacate that portion of the certification of representation that included Kondelis's position in the collective-bargaining unit.

¶ 34                                    III. CONCLUSION

¶ 35 For the reasons stated, we reverse that part of the Board's decision finding Kondelis's position was not a confidential employee and vacate the part of the certification of representation that included Kondelis's position in the collective-bargaining unit.

¶ 36 Reversed in part and vacated in part.