NO. 4-06-0560          Filed: 6-25-07

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| THE BOARD OF EDUCATION OF GLENVIEW | ) | Direct Appeal from |
| COMMUNITY CONSOLIDATED SCHOOL | ) | Illinois Educational |
| DISTRICT NO. 34, | ) | Labor Relations |
|      Petitioner-Appellant, | ) | Board |
|      v. | ) | No. 2006-RS-0002-C |
| THE ILLINOIS EDUCATIONAL LABOR | ) | |
| RELATIONS BOARD; VICTOR E. BLACKWELL, | ) | |
| Executive Director; and GLENVIEW | ) | |
| PROFESSIONAL ASSOCIATION, IEA/NEA, | ) | |
|      Respondents-Appellees. | ) | |

_____

PRESIDING JUSTICE STEIGMANN delivered the opinion of the court:

Petitioner, the Board of Education of Glenview Community Consolidated School District No. 34 (District), appeals from a March 2006 final order of respondent Illinois Educational Labor Relations Board (Board), in which the Board determined that the position of administrative assistant to the director of technology (technology administrative assistant) in the District was included in a bargaining unit represented by respondent Glenview Professional Association, IEA/NEA (Association). We affirm the Board's order.

I. BACKGROUND

In September 2005, the Association filed a petition with the Board, seeking to add the technology administrative assistant position to a bargaining unit represented by the

Association. Later that month, the District filed a response, arguing that the technology administrative assistant position was "confidential," pursuant to the Illinois Educational Labor Relations Act (115 ILCS 5/2(n) (West 2004)).

At an October 2005 hearing on the petition conducted by an administrative law judge (ALJ), the evidence showed the following. At the end of the 2003-04 school year, the District created a new full-time position of technology administrative assistant. That position combined some of the duties of a former full-time network technician with the duties of a former part-time administrative assistant. The District's technology department also includes the director of educational technology (Brian Engle), the network manager (Kelly Conwell), and four network engineers. The network engineers report to work at individual school buildings and are responsible for day-to-day troubleshooting in those buildings. The technology administrative assistant position reports to work in the District's administrative building, along with the director of educational technology and the network manager.

The job description for the technology administrative assistant indicates that the purpose of the position is "to provide administrative and secretarial support to ensure the smooth operations of school[-]related and business functions" of the District. The job description also lists the following job

responsibilities: (1) provide support to the director of educational technology, network manager, and network engineers; (2) coordinate technology purchases; (3) coordinate inventory of software and hardware; (4) maintain the District's voice mail, e-mail, and telephone systems; (5) coordinate telephone system service activities; (6) coordinate new staff members' access to the District's network and PowerSchool (a software program that allows the District to track student attendance and report grades); (7) maintain group e-mail lists; (8) provide support with computer-software applications; (9) develop and download data sets for certain assessment systems; and (10) assist in the technology budgeting process. The job description also indicates that the technology administrative assistant should have the "[a]bility to handle confidential information," but it does not specify the nature of such confidential information.

Marilyn Miller testified on the District's behalf that she had been the District's executive director of human resources for 12 years, until her retirement in June 2005. The technology administrative assistant position was first advertised prior to the start of the 2004-05 school year. An individual was hired and held that position from September 2004 through December 2004. Margaret Coons was then hired as the technology administrative assistant.

As the executive director of human resources, Miller's

- 3 -

responsibilities included hiring, making tenure recommendations, overseeing applications and evaluations, addressing salary issues, working with labor-relations groups, and serving on the labor-relations management committee. During the last round of labor negotiations with the Association, Miller was on the District's negotiating team. Miller and her administrative assistants regularly used their computers to draft policies and salary proposals, saved those documents to the human-resources shared folder, and e-mailed documents and messages to other administrators regarding negotiations and grievance settlements. She also attached documents to her e-mails to share with school-board members and the District's attorneys. Miller did not recall ever personally showing any confidential labor-relations documents to the technology administrative assistant or to the predecessor to that position--namely, the former full-time network technician.

Engle testified on the District's behalf that he had been the director of educational technology for about one year. The director of educational technology is responsible for the District's technology department, educational technology, and assuring that technology is being appropriately integrated into the classrooms. The technology administrative assistant is one of three technology employees in the administration building who perform troubleshooting duties. The network manager is responsi-

- 4 -

ble for the District's entire network, while the network engineers are responsible for "the day-to-day troubleshooting work on the computers." In addition to performing "clerical" duties, the technology administrative assistant provides "level[-]one" technology support to staff members in the administrative building. Engle described level-one troubleshooting as "quick troubleshooting" involving "easy issues." The technology administrative assistant also adds users to the District's network, which involves using a program called WorkGroup Manager to create new user accounts, maintain user names and passwords, and grant access to e-mail groups. The technology administrative assistant is one of eight staff members who possess the master password that allows for computer troubleshooting. If Engle and Conwell are both out of the administrative building, staff members could ask Coons to assist them in retrieving lost documents. To do so, she would be expected to use the master password to try to find the document on the server, desktop, or hard drive. Engle stated that when he and Conwell are not in their offices, they are available via cellular phone or can be contacted through the help desk. When asked if Coons uses the master password to retrieve lost documents "in the regular course of her job duties," Engle replied as follows: "I don't know the percentage or the amount because she would only do it if [I was] not in the building." Engle also stated that Coons "could be" expected to retrieve or

repair files in which collective-bargaining information is stored. Coons "might come across" a labor-relations document when (1) a staff member is locked out of a file and Coons uses WorkGroup Manager to reestablish the staff member's permission to access the file or (2) she is performing "face-to-face trouble-shooting." The technology administrative assistant is not responsible for "system tape backups."

Engle also testified that the technology administrative assistant is required to maintain confidentiality with respect to network security and any information encountered while trouble-shooting. If Coons were to access a staff member's e-mail account, that staff member would know because Coons would be required to change the staff member's password to access the account. However, if Coons were working at a staff member's workstation, no one would know whether she accessed an e-mail or other document. Engle stated that Coons had never seen a confidential labor-relations document.

Jill Engel testified on the District's behalf that she had been the District's director of human resources since July 2005. In that capacity, she oversees all employment matters for the District. She is also on the labor-relations committee, where she deals with issues related to the formation of the District's policies and procedures. The next round of labor negotiations with the Association was scheduled to begin in

February 2006, and Engel planned to be a member of the negotiating team.  She anticipated using her computer to create documents containing proposals and analyses on economic issues, saving those documents to a subfolder within the shared human-resources folder.  Engel also expected to use e-mail to communicate with other administrators regarding labor-relations issues.

Engel also testified that she considered the technology administrative assistant position more technology related than secretarial or administrative.  Engel considered Coons the "go-to" person for technology-related issues in the administration building.  However, she did not know how much time Coons spent performing troubleshooting duties.  Engel preferred not to ask Engle or Conwell for technology-related assistance because it takes them away from their duties in the individual schools.  However, if Coons is not available, she asks either Engle or Conwell for assistance.  On one occasion when Coons helped Engel with an e-mail issue, the subject-matter lines of Engel's e-mails were displayed.  Engel could "almost guarantee" that some of those e-mails had subject matter that "related to sensitive issues that could be related to" labor-relations issues.

Coons testified on the Association's behalf that in January 2005, she began working in the technology administrative assistant position.  The majority of her job duties involve administrative duties, such as obtaining price quotes on

computer-related equipment and software, placing orders per requests from the network manager, keeping inventory of hardware and software products, and calling outside vendors for needed computer support. She has access to the technology budget and the technology accounts, but the business office must provide her with access to other accounts. In addition, Coons is responsible for "add[ing] users to the District's network" by creating new user accounts and assigning to the new users various computer privileges, such as e-mail accounts and access to group e-mails and group folders. After assigning a new staff member an e-mail username and password, Coons instructs the staff member to change his password. Coons would then be required to "go in and actually change the password for that individual" if she wanted to access that staff member's e-mail account. Coons' job entails similar responsibilities for the voice-mail system. Coons has never been asked to read any staff member's e-mails.

Coons also testified that the majority of the trouble-shooting duties are performed by the network manager. Coons has never used the District's remote desktop to access computer files or drafts of documents, and she does not know how to do so. Instead, the network manager performs such duties. Coons stated that if a staff member has problems with her e-mail password, Coons "wouldn't even venture to try and help." Instead, she would direct that staff member to the network manager, who "knows

the ins and outs of e-mail."  Nor has Coons ever been assigned to look at any labor-relations materials.  The only confidential material that may have "ever crossed [her] desk" was students' standardized test scores.  Coons has taught other staff members how to make charts using the Excel software program and had given Engel access to an e-mail group that included staff members for the primary grades.  Giving Engel that access did not require Coons to enter Engel's e-mail account or view any of Engel's e-mails.  Instead, it required only that Coons enter the network and "pull[] a name from one area of the screen into another."  Coons acknowledged that in assisting a staff member with a computer-related problem, it is possible that a document could be opened in front of her.

In November 2005, the ALJ issued a recommended decision and order dismissing the Association's petition.  Glenview Professional Ass'n, 21 Pub. Employee Rep. (Ill.) par. 201, No. 2006-RS-0002-C (ALJ decision, Illinois Educational Labor Relations Board) (November 16, 2005).  In so doing, the ALJ determined that the position of technology administrative assistant was a "confidential employee" under section 2(n)(ii) of the Act (115 ILCS 5/2(n)(ii) (West 2004)).  Later that month, the Association filed exceptions to the ALJ's decision, and in December 2005, the District filed a response.

In March 2006, the Board issued an order reversing the

ALJ's decision, upon determining that the position of technology administrative assistant did not constitute a "confidential employee" under section 2(n)(ii) of the Act (115 ILCS 5/2(n)(ii) (West 2004)).  Glenview Professional Ass'n, 22 Pub. Employee Rep. (Ill.) par. 37, No. 2006-RS-0002-C (Illinois Educational Labor Relations Board) (March 23, 2006) (hereinafter Glenview Professional Ass'n, 22 Pub. Employee Rep. (Ill.) par. 37).  In June 2006, the Board certified that Coons had chosen to be represented by the Association.

This appeal followed.

II. ANALYSIS

A. The Act and the Standard of Review

The purpose of the Act is to regulate labor relations between educational employers and employees for their benefit as well as that of the general public.  115 ILCS 5/1 (West 2004); Board of Education of Community Consolidated High School District No. 230, Cook County v. Illinois Educational Labor Relations Board, 165 Ill. App. 3d 41, 56, 518 N.E.2d 713, 722 (1987). Section 2(b) of the Act defines an "educational employee" as "any individual, excluding *** confidential *** employees" (115 ILCS 5/2(b) (West 2004)).  Section 2(n)(ii) of the Act defines a "confidential employee," in pertinent part, as one who, "in the regular course of his or her duties has access to information relating to the effectuation or review of the employer's

- 10 -

collective[-]bargaining policies" (115 ILCS 5/2(n)(ii) (West 2004)).  Thus, employees that are deemed "confidential" "are excludable from labor organizations which otherwise represent those employees and act to protect their rights."  District No. 230, 165 Ill. App. 3d at 56, 518 N.E.2d at 722.  The confidential-employee exclusion "is designed to protect against premature disclosure of bargaining positions" (District No. 230, 165 Ill. App. 3d at 61, 518 N.E.2d at 726) by limiting the bargaining association's membership to those employees who do not, in the regular course of their jobs, have access to "'information concerning matters arising from the collective[-]bargaining process'" (District No. 230, 165 Ill. App. 3d at 63, 518 N.E.2d at 727, quoting City of Burbank, 1 Pub. Employee Rep. (Ill.) par. 2008, No. S-RC-45, at 44 (Illinois State Labor Relations Board, June 6, 1985)).

Under section 2(n)(ii)'s "access test," the "inquiry is limited to whether the employee in question has unfettered access ahead of time to information pertinent to the review or effectuation of pending collective-bargaining policies."  District No. 230, 165 Ill. App. 3d at 62, 518 N.E.2d at 726.  The information must be confidential, and the employee's access to the information must be authorized.  District No. 230, 165 Ill. App. 3d at 62, 518 N.E.2d at 726; see Chief Judge of the Circuit Court v. American Federation of State, County & Municipal Employess,

Council 31, 153 Ill. 2d 508, 523, 607 N.E.2d 182, 189 (1992) (discussing analogous statutory language).  Confidential information includes "'the employer's strategy in dealing with an organizational campaign, actual collective[-]bargaining proposals and information relating to matters dealing with contract administration.'"  District No. 230, 165 Ill. App. 3d at 63, 518 N.E.2d at 727, quoting City of Burbank, 1 Pub. Employee Rep. (Ill.) par. 2008, No. S-RC-45, at 44 (Illinois State Labor Relations Board) (June 6, 1985).  Because the statutory exclusion precludes the confidential employee from exercising the panoply of rights guaranteed by the Act, courts must narrowly interpret the exclusion.  One Equal Voice v. Illinois Educational Labor Relations Board, 333 Ill. App. 3d 1036, 1042, 777 N.E.2d 648, 653 (2002).  The party asserting the exclusion has the burden of producing sufficient evidence to support its position.  See County of Cook v. Illinois Labor Relations Board, 369 Ill. App. 3d 112, 123, 859 N.E.2d 80, 89 (2006) (discussing analogous statutory language and holding that "[a]n employer who wishes to exclude an employee from a bargaining unit because the employee is a confidential employee bears the burden of proving that fact").

The parties agree that the Board's determination as to whether the facts establish that an employee is a confidential employee as defined by statute will not be reversed unless that

- 12 -

determination was clearly erroneous.  Chicago Teachers Union v.
Illinois Educational Labor Relations Board, 344 Ill. App. 3d 624,
637, 800 N.E.2d 475, 484 (2003); see also One Equal Voice, 333
Ill. App. 3d at 1041, 777 N.E.2d at 653 (because the Board's
determination whether a position is confidential "is best charac-
terized as a mixed question of law and fact," that determination
should be reviewed under the clearly erroneous standard).  The
clearly erroneous standard is "extremely deferential."  Chicago
Teachers Union, 344 Ill. App. 3d at 638, 800 N.E.2d at 485.
Thus, an administrative agency's decision will be reversed only
if the reviewing court, based on the entire record, is "'left
with the definite and firm conviction that a mistake has been
committed.'"  AFM Messenger Service, Inc. v. Department of
Employment Security, 198 Ill. 2d 380, 393, 763 N.E.2d 272, 280-81
(2001), quoting United States v. United States Gypsum Co., 333
U.S. 364, 395, 92 L. Ed. 746, 766, 68 S. Ct. 525, 542 (1948); see
also Fisher v. Roe, 263 F.3d 906, 912 (9th Cir. 2001), quoting
Parts & Electric Motors, Inc. v. Sterling Electric, Inc., 866
F.2d 228, 233 (7th Cir. 1988) (describing the clearly erroneous
standard as follows:  "'[M]ore than just maybe or probably wrong;
it must *** strike us as wrong with the force of a five-week-old,
unrefrigerated dead fish").  Nonetheless, the clearly erroneous
standard does not mean that a reviewing court "must blindly defer
to the agency's decision."  AFM Messenger Service, 198 Ill. 2d at

- 13 -

395, 763 N.E.2d at 282.

B. The Board's Prior Decisions Interpreting
Section 2(n)(ii)'s Access Test

In Woodland Community Unit School District 5, 16 Pub.
Employee Rep. (Ill.) par. 1026, No. 99-UC-0005-2 (Illinois
Educational Labor Relations Board) (February 1, 2000) (hereinaf-
ter Woodland, 16 Pub. Employee Rep. (Ill.) par. 1026), the
Woodland Education Association sought to add a newly created
position of technology coordinator to the bargaining unit the
Association represented.  The job description for that position
provided that one of the coordinator's "essential duties and
responsibilities" was to maintain strict confidentiality with
respect to "information relating to *** the effectuation or
review of the [school district's] collective[-]bargaining poli-
cies."  Woodland, 16 Pub. Employee Rep. (Ill.) par. 1026, at IX-
79. The technology coordinator was responsible for the security,
maintenance, and repair of the school district's computers.  The
coordinator had access to all of the school district's files and
backup system and had authority to open any and all computer
files to make sure that they had not been corrupted and perform
repairs.  To perform maintenance and repair functions, the
coordinator often had to access a file, which was then displayed
on a computer screen.  The evidence showed that once a file was
actually displayed on a screen, "it would be virtually impossible
not to read the document displayed."  Woodland, 16 Pub. Employee

Rep. (Ill.) par. 1026, at IX-80. The technology coordinator could and actually did access all files with or without the superintendent's direction. The coordinator's access to the superintendent's files, which contained collective-bargaining information, could not be detected. The technology coordinator was the only employee who was assigned to maintain all network user names and passwords and who was capable of reading backup tapes of the school district's computer system. The Board determined that the technology coordinator was a confidential employee under section 2(n)(ii) of the Act (115 ILCS 5/2(n)(ii) (West 1998)). The Board reasoned that the technology coordinator had access to confidential collective-bargaining information "in the regular course" of her duties. In addition, the Board emphasized that when addressing cases involving computer-technology related positions, it would "decide each representation case on the basis of the facts presented in that case alone." Woodland, 16 Pub. Employee Rep. (Ill.) par. 1026, at IX-81.

In Lake County Area Vocational System, 20 Pub. Employee Rep. (Ill.) par. 5, No. 2003-UC-0003-C (Illinois State Labor Relations Board) (January 20, 2004) (hereinafter Lake County Area Vocational System, 20 Pub. Employee Rep. (Ill.) par. 5), the Board clarified its decision in Woodland. The Board stated that when deciding unit-clarification petitions involving employees who are responsible for the operation and maintenance of an

employer's computer system, the Board would consider the following factors: (1) whether evidence exists of "actual access to confidential collective[-]bargaining information in the regular course of duties," (2) the job description of the position at issue, and (3) the employee's day-to-day activities. Lake County Area Vocational System, 20 Pub. Employee Rep. (Ill.) par. 5, at 32. The Board also stated that "[w]here a position has existed for an amount of time, [the Board] will heavily weigh evidence of actual access to confidential labor relations material as part of that individual's job." Lake County Area Vocational System, 20 Pub. Employee Rep. (Ill.) par. 5, at 32. The Board further noted that it would closely scrutinize cases in which multiple technicians handle confidential information.

C. The Board's Decision in This Case

The District argues that the Board's determination that the position of technology administrative assistant did not constitute a "confidential employee" under section 2(n)(ii) of the Act (115 ILCS 5/2(n)(ii) (West 2004)) was clearly erroneous. We disagree.

In determining that the position of technology administrative assistant did not constitute a confidential employee under section 2(n)(ii) of the Act (115 ILCS 5/2(n)(ii) (West 2004)), the Board stated, in pertinent part, the following:

    "Under the three-step test in Lake

- 16 -

County, the [technology administrative assistant] is not a confidential employee. First, the facts do not establish Coons' actual access to confidential collective[-]bargaining information in the regular course of her duties. Unlike the [t]echnology [c]oordinator in Woodland, it has not been demonstrated that Coons accesses all files to maintain the computer system and ensure that it is operating properly. The evidence establishes only that Coons gives other employees access to the District's computer system, and that documents that Coons might encounter while troubleshooting, retrieving[,] or repairing them could include labor[-]relations documents. The District has not demonstrated that giving access to a computer system involves review of the documents contained in that system. *** Miller *** admitted that she had not shown Coons or the employee in the eliminated [n]etwork [t]echnician's position, who also engaged in technology troubleshooting and whose position was incorporated into Coons' position, any labor[-]relations

documents.

Moreover, the [Board] stated in <u>Lake County</u> that an employee will not be considered confidential when his/her access to confidential information is incidental to his/her primary duties, like that of a custodian emptying a superintendent's wastebasket. Here, Coons testified that she does not pay attention to documents when she is troubleshooting. This demonstrates that reading the documents is not an inherent part of her troubleshooting duty, but is no more required than a custodian is required to read the documents in the wastebasket that he/she is emptying. Unlike in <u>Woodland</u>, the District did not provide evidence that Coons' duties require her to read the documents that she is troubleshooting. Thus, contrary to the District's argument, any access of Coons to confidential labor relations information would result from chance, rather than being inherent in the functions of her position.

The District argues that it should not be required to establish that Coons has actu-

- 18 -

ally seen confidential information.  In re-
quiring that the District establish Coons'
actual access to confidential collective[-]
bargaining information in the regular course
of her duties, we do not require the District
to establish that Coons has actually seen
such information, but only that real and more
than incidental access will occur in the
regular course of her duties.

The District argues that Coons has the
unfettered ability to access information on
the District's computer network at will, and
that she can access files saved locally on a
computer's hard drive.  The District asserts
that this access includes unfettered access
ahead of time to confidential labor[-]rela-
tions information.  However, unlike the
[t]echnology [c]oordinator in Woodland, there
is no evidence that Coons has been given the
responsibility of accessing all files in
order to maintain the computer system.  The
District has not demonstrated that for Coons
to explore files she has not been specifi-
cally asked to work on would be authorized or

in the regular course of her duties.  Coons'
ability to see the descriptive titles of
subfolders, files[,] and e[-]mails does not
establish authorization to view the documents
themselves.

The District also argues that a reason-
able expectation existed that Coons would be
placed in close proximity to and would have
access to confidential collective[-]bargain-
ing information when negotiations began in
February 2006.  However, Coons' duties would
involve such access only in that documents
that she might encounter while troubleshoot-
ing, retrieving[,] or repairing them could
include labor[-]relations documents.  The
District did not provide evidence that Coons'
duties would require her to read the docu-
ments that she would be troubleshooting.
Thus, even during the February 2006 negotia-
tions, Coons would not have authorized access
to confidential collective[-]bargaining in-
formation in the regular course of her du-
ties.

In addition, the District argues that

the fact that Coons' access to confidential information may occur sporadically is of no consequence to her status as a confidential employee. We recognize that, when it occurs in the regular course of an individual's duties, sporadic access to confidential collective[-]bargaining information may be sufficient to establish confidential status. See <u>Board of Education of Plainfield Community Consolidated School District No. 202 v. IELRB</u>, 143 Ill. App. 3d 898, 493 N.E.2d 1130 (4th Dist. 1986). However, we do not find here that sporadic access to confidential collective[-]bargaining information would be insufficient to establish confidential status. Rather, we require that access to confidential collective[-]bargaining information be actual and in the regular course of the disputed individual's duties. In sum, we conclude that the facts in this case do not establish that the [technology administrative assistant] has actual access to confidential collective[-]bargaining information in the regular course of her duties.

Second, Coons' job description does not indicate that she is to have access to confidential labor[-]relations information. While her job description states that her position requires the 'ability to handle confidential information,' it does not elaborate as to the nature of the confidential information. This is unlike the [t]echnology [c]oordinator's job description in Woodland, which specified that the information that the [t]echnology [c]oordinator was expected to keep confidential related to the 'the effectuation or review of the District's collective[-]bargaining policies. ***

Third, an analysis of Coons' day-to-day activities does not demonstrate that she is a confidential employee. Coons' day-to-day activities consist of performing various administrative duties and providing technology support for the District administrative office. Within the realm of providing technology support, her day-to-day activities included setting up and helping with computer access, providing support for user accounts,

- 22 -

troubleshooting, helping other employees who ask for assistance in operating their software, maintaining the [e-]mail system, and coordinating and maintaining the District telephone system.  Unlike the [t]echnology [c]oordinator in Woodland, Coons is not responsible for system tape back[]ups.  The District has not made a sufficient showing that these duties entail authorized access to confidential labor[-]relations information."  Glenview Professional Ass'n, 22 Pub. Employee Rep. (Ill.) par. 37, at 131-32.

We have carefully reviewed the evidence presented under the appropriate standard of review, as we are required to do.  Having done so, we are not "'left with the definite and firm conviction that a mistake has been committed.'"  AFM Messenger Service, 198 Ill. 2d at 393, 763 N.E.2d at 280-81, quoting United States Gypsum Co., 333 U.S. at 395, 92 L. Ed. at 766, 68 S. Ct. at 568.  The evidence showed that in the course of her regular duties, the technology administrative assistant theoretically could have access to confidential collective-bargaining information.  However, the District presented no evidence showing that the technology administrative assistant (or the predecessor network technician, for that matter) had actual authorized,

unfettered access to such confidential information in the course of her regular duties. In addition, the evidence showed that the technology administrative assistant's day-to-day activities predominantly involved general administrative duties. To the extent those day-to-day activities involved technology support and computer troubleshooting, such duties did not involve authorized, unfettered access to confidential collective-bargaining information. Instead, the evidence showed that, at most, the technology administrative assistant had been exposed to the names of folders and subfolders and e-mail subject lines that may have suggested that the underlying content of the documents related to confidential bargaining information. The evidence further showed that while the technology administrative assistant's job description indicates that the person occupying the position should have the "'ability to handle confidential information'" (<u>Glenview Professional Ass'n</u>, 22 Pub. Employee Rep. (Ill.) par. 37, at 132), it does not specify the nature of such confidential information.

We thus conclude that the Board's decision that the technology administrative assistant position did not constitute a confidential employee under section 2(n)(ii) of the Act was not clearly erroneous.

In so concluding, we reject the District's contention that the Board "applied a new 'actual access' standard." In-

stead, the Board's written decision shows that the Board simply applied the three-step test outlined in Woodland (including the "actual[-]access" test) to the facts of this case. We agree with the Board that the way it defined "actual access"--namely, as real and more than incidental access *** occur[ring] in the regular course of her duties (Glenview Professional Ass'n, 22 Pub. Employee Rep. (Ill.) par. 37, at 131)--was consistent with prior decisions of the Board and the National Labor Relations Board that rejected claims that employees were confidential because they had occasional, irregular, or potential access to collective-bargaining material. See, for example, In re Bethlehem-Sparrows Point Shipyard, Inc., 65 N.L.R.B. 284, 287 (1947) (rejecting an employer's assertion that photostat opera-tors were confidential employees because "they photostat, on occasion, matters from the general manager's office which pertain to confidential labor relations data"); District No. 230, 165 Ill. App. 3d at 61-63, 518 N.E.2d at 726-27 (in which this court affirmed the hearing officer's determination that the secretaries at issue were not confidential employees, even though evidence showed that the secretaries had access to employee personnel files and had acted "in a confidential capacity" regarding grievances).

We also reject the District's contention that the Board acted inappropriately when it heavily weighed the actual access

to collective-bargaining material in this case. According to the District, the technology administrative assistant position was newly created, similar to the technology coordinator position in Woodland. When the position at issue is newly created, actual access to confidential labor-relations information should not be given much weight, especially when labor negotiations had not taken place during the short time that the position existed. Unlike the newly created position in Woodland, which had existed for only four months at the time of the hearing in that case, the technology administrative assistant position here had existed and been staffed for more than a year before the October 2005 hearing on the petition. We recognize that the Board in Lake County did not specifically define what it means for a position to have "existed for an amount of time." Lake County Area Vocational System, 20 Pub. Employee Rep. (Ill.) par. 5, at 32. However, whatever that phrase means, we conclude that the Board did not act inappropriately by giving weight to the technology administrative assistant position's actual access to collective bargaining material.

We further reject the District's contention that the Board arbitrarily applied "greater scrutiny" in this case based on its decision in Lake County, in which the Board noted that it would scrutinize cases in which multiple technicians handle confidential information. In this case, the District claimed

- 26 -

that all eight of its technical employees who possess the master password constitute confidential employees under the Act. In addition, the evidence showed that (1) Engle and Conwell are principally responsible for troubleshooting computer problems in the administration building; (2) both Engle and Conwell have offices in the administration building; (3) when they are not in their offices, they are available via cellular phone or can be contacted through the help desk; and (4) both Engle and Conwell can perform troubleshooting duties from remote locations. Given that the District has multiple technicians who allegedly handle confidential information and both Engle and Conwell are available for troubleshooting within the administration building, the Board did not act arbitrarily by applying greater scrutiny here. Nor did the Board's application of that standard result in its telling the District how it should run its technology department or structure its staff. Instead, as the Association points out, the Board merely determined that where (1) an educational employer has multiple technicians (each of whom the employer purports is confidential) and (2) the status of one of those technicians is questioned, the Board "will look carefully at the evidence to ensure that the Act's indicia of 'confidential status' is met as to that employee" (emphasis in original). We note that the Board's "greater scrutiny" test is consistent with the National Labor Relations Board's longstanding principle of

looking critically at supervisory status where the exclusion of supervisors in a department would result in an abnormally high ratio of supervisors to those being supervised.  See, for example, National Labor Relations Board v. Health Care Logistics, Inc., 784 F.2d 232, 235 (6th Cir. 1986) (affirming the National Labor Relations Board's decision rejecting supervisory status, in part, on the basis that the company's assessment of supervisory status would result in a ratio of one supervisor to two or three employees, which was "'clearly out of balance'").

Finally, we reject the District's contention that the Board acted arbitrarily by determining that the technology administrative assistant "would have to 'read' the documents displayed on the computer screen in order for it to be considered an inherent part of her job duty."  Viewing the Board's written decision in its totality, we agree with the Association that the Board's remark that Coons does not "read" documents while troubleshooting (Glenview Professional Ass'n, 22 Pub. Employee Rep. (Ill.) par. 37, at 132) was part of a lengthy discussion of the distinction between the job duties performed by the technology coordinator in Woodland (who often accessed files, which were then displayed on the computer screen, thus being virtually impossible not to read) and the technology administrative assistant position here.  Given that no evidence showed that the technology administrative assistant had actual access to confi-

dential collective-bargaining documents in the regular course of her computer troubleshooting duties, the Board's isolated remark does not constitute arbitrariness in the Board's decision.

### III. CONCLUSION

For the reasons stated, we affirm the Board's order.

Affirmed.

MYERSCOUGH and KNECHT, JJ., concur.